UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Jose Antonio Rodriguez,                                    Case No. 04-47510
                                                           Chapter 7
                          Debtor.                          Hon. Phillip J. Shefferly
_____/
Jose Rodriguez,

                 Plaintiff,

v.                                                         Adv. No. 05-5149

Fedex Freight East, Inc.,

                 Defendant.
_____/

**OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.

Introduction

        This matter is before the Court on a first amended complaint filed by Plaintiff against Fedex Freight

East, Inc.  The first amended complaint contains two counts.  Count I alleges that Defendant engaged in

race discrimination in violation of the Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), Mich. Comp. Laws

Ann. § 37.2101 - .2804 (West 2001).  Count II alleges retaliation by Defendant against Plaintiff in

violation of Elliott-Larsen.  Defendant filed a motion for summary judgment under Fed. R. Civ. P. 56(b)

made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056(b).  The Court held a hearing

on August 26, 2005.  The Court took the motion for summary judgment under advisement.  For the

reasons set forth in this opinion, Defendant's motion for summary judgment is granted.

## II.
## Procedural History and Jurisdiction

On June 30, 1999, American Freightways hired Plaintiff to work as a truck driver. On August 11, 2000, Plaintiff resigned from his position with American Freightways. On December 4, 2000, American Freightways rehired Plaintiff. In February, 2001, American Freightways was acquired by Fedex Freight East, Inc., the Defendant. From that date forward, Plaintiff was employed by Defendant. During his employment, Plaintiff worked out of Defendant's Romulus, Michigan facility. On July 30, 2003, Plaintiff tendered a letter to Defendant advising that he was resigning effective August 1, 2003. Plaintiff explained in the letter that he was leaving because Defendant "refused to address my numerous complaints of being discriminated against because of my race as an Hispanic-American." (Def.'s Br. in Supp. of Mot. for Summ. J., Ex. 7.) On December 2, 2003, Plaintiff filed an action in Wayne County Circuit Court against Defendant alleging violations of Elliott-Larsen. On January 5, 2004, Defendant removed the action to the U.S. District Court for the Eastern District of Michigan.

On March 16, 2004, while the action was pending in the U.S. District Court, Plaintiff filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and became a debtor in a bankruptcy case. Stuart Gold was appointed as the Chapter 7 Trustee in the bankruptcy case. Plaintiff's action against Defendant remained pending in the U.S. District Court, but it was now property of the bankruptcy estate under § 541 of the Bankruptcy Code, to be administered by the Chapter 7 Trustee.

On August 30, 2004, the Chapter 7 Trustee filed a motion in the Bankruptcy Court seeking authority on behalf of the bankruptcy estate to compromise and settle Plaintiff's action against Defendant.

Plaintiff objected to the motion and insisted that the settlement proposed by the Trustee did not sufficiently reflect the fair value of the merits of the action, nor did it provide that Plaintiff would be reinstated to a job with Defendant. The Bankruptcy Court held a hearing on October 8, 2004. For reasons set forth in more detail on the record at that hearing, the Court denied the Trustee's motion without prejudice because the Trustee failed to demonstrate that the proposed settlement was in the best interest of the Chapter 7 bankruptcy estate or otherwise met the criteria required by Sixth Circuit case law to authorize a trustee to enter into a compromise of litigation. See Reynolds v. Commissioner, 861 F.2d 469, 473 (6th Cir. 1988) (cautioning that "the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable" and should not "act as a mere rubber stamp or to rely on the trustee's word that the compromise is 'reasonable'").

On October 18, 2004, Defendant filed a motion for summary judgment in the U.S. District Court. In large part, that motion was based upon the failure of Plaintiff to timely reply to Defendant's requests for admissions and various discovery requests that it had submitted to Plaintiff in the U.S. District Court.

While the motion for summary judgment was pending in the U.S. District Court, and after undertaking some additional investigation regarding the action, on November 12, 2004, the Trustee filed with the Bankruptcy Court a second motion for authority to compromise Plaintiff's claim against Defendant. Plaintiff again objected. The Bankruptcy Court held a hearing on January 7, 2005. After hearing arguments of counsel, the Bankruptcy Court inquired of the parties whether they wished to introduce any evidence in the record to support their respective positions in favor of or against the proposed settlement. The Trustee indicated that he did wish to introduce evidence, but neither the Trustee nor the Plaintiff desired

-3-

to do so at the time of that hearing on the Trustee's motion. Instead, each of them requested the Bankruptcy Court to schedule a new date for an evidentiary hearing. The Bankruptcy Court then scheduled an evidentiary hearing for January 19, 2005. On the day before the scheduled evidentiary hearing, on January 18, 2005, the Trustee filed a notice of withdrawal of his motion for authority to compromise Plaintiff's claim against Defendant.

Rather than seeking approval to settle, the Trustee then filed an application requesting Bankruptcy Court approval to employ attorney D. Rick Martin as special counsel for the Trustee for the purpose of prosecuting Plaintiff's claim against Defendant. At that time the action was still pending in the U.S. District Court. On February 8, 2005, Plaintiff and Defendant stipulated to the entry of an order by the U.S. District Court that granted Plaintiff's motion requesting that Plaintiff be permitted to withdraw his default admissions to Defendant's request for admissions. Meanwhile, Defendant's motion for summary judgment had not yet been heard or adjudicated by the U.S. District Court. After the Trustee's motion for authority to compromise the action was withdrawn from the Bankruptcy Court, Defendant renewed its efforts to prosecute its motion for summary judgment in the U.S. District Court.

The U.S. District Court did not hear Defendant's motion for summary judgment. Instead, the U.S. District Court entered an order entitled "Order Referring Matter to Bankruptcy Court on Failure to Show Cause." That order referred Plaintiff's action against Defendant to the Bankruptcy Court for any further proceedings.

Before addressing Defendant's motion for summary judgment, it is appropriate to review the Bankruptcy Court's jurisdiction over Plaintiff's action after the action was referred to the Bankruptcy Court on March 3, 2005. The unusual procedural history and posture of this case implicates various jurisdictional

-4-

provisions of Title 28. First, a distinction needs to be made between the Trustee's motion to compromise and the discrimination lawsuit itself. The former is a core proceeding under 28 U.S.C. 157(b)(2)(A) and (O), over which the Bankruptcy Court has jurisdiction under 28 U.S.C. 1334(b) and pursuant to the blanket referral by the U.S. District Court under Local R. 83.50(a) (E.D. Mich. 2003), as provided under 28 U.S.C. § 157(b)(1).

On the other hand, Plaintiff's suit against Defendant is an asset of the bankruptcy estate. See Parker v. Wendy's International, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (finding that, under § 541(a)(1), racial discrimination suit against former employer was property of the estate); Weiburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5thCir. 2001) (same for age and sex discrimination suit); Bard v. Sicherman (In re Bard), Nos. 01-3006, 01-3029, 49 Fed. Appx. 528, 529 (6th Cir. Oct. 14, 2002) (finding debtor's suit against her former employer fell under control of chapter 7 trustee upon conversion from chapter 13 (where property of the estate vests in the debtor upon plan confirmation) to chapter 7).


However, property of the estate and jurisdiction are separate legal concepts. The fact that Plaintiff's lawsuit is an asset of the bankruptcy estate does not give the Bankruptcy Court unlimited jurisdiction to decide the merits of the case. As a pre-petition suit based on pre-petition events, this matter is a civil proceeding that is only related to Plaintiff's bankruptcy case, and thus not a core proceeding. See generally 1 Collier on Bankruptcy ¶ 3.01 (15th ed. rev. 2005) (discussing the history of bankruptcy court jurisdiction generally, and in particular Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87 (1982), where a plurality found the bankruptcy court's jurisdiction over a breach of contract suit to be an unconstitutional exercise of the powers of the Article III district court, leading to amendments

of 28 U.S.C. § 1334); see also Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995) ("Proceedings 'related to' the bankruptcy include [ ] causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 . . . .") (citation omitted).

Jurisdiction of the Bankruptcy Court over related proceedings is concurrent with the jurisdiction of the district court. 28 U.S.C. § 1334(b) ("[T]he district court shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11."). Further, the Bankruptcy Court's jurisdiction over "related" or "non-core" proceedings is restricted by 28 U.S.C. § 1334(c)(1): "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." "The bankruptcy court does not have the power, absent consent of the parties, to enter final orders and judgments on non-core proceedings." In re Wolverine Radio Co., 930 F.2d 1132, 1144 n.17 (6th Cir. 1991) (citations omitted). Instead, "the bankruptcy court shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ." 28 U.S.C. § 157(c)(1).

In its March 3, 2005 order, the U.S. District Court specifically referred this related proceeding to the Bankruptcy Court, stating: "Pursuant to Local Rule 83.50(a)(1), this matter, including defendant's pending motion for summary judgment, will be referred to the Bankruptcy Court . . . ."

However, the jurisdictional issues in this case were yet further complicated by Plaintiff's demand for a jury trial. After the U.S. District Court referred Plaintiff's action to the Bankruptcy Court on March 3, 2005, the Bankruptcy Court scheduled a status conference for March 28, 2005 to develop a schedule to prosecute the action in the Bankruptcy Court. At the scheduling conference, the parties brought to the Bankruptcy Court's attention the fact that a jury demand had been timely filed when Plaintiff first brought

-6-

the action in Wayne County Circuit Court, prior to its removal to the U.S. District Court. Under 28 U.S.C. § 157(e), if there is a right to a jury trial in a proceeding that may be heard by the Bankruptcy Court under § 157, the Bankruptcy Court may conduct the jury trial if it is specially designated to exercise such jurisdiction by the U.S. District Court and with the express consent of all the parties. By local rule, if a party to an action in which a jury demand has been made does not consent to have the bankruptcy judge conduct the jury trial, then that party shall file a motion to withdraw the reference from the U.S. District Court to the Bankruptcy Court. L.B.R. 9015-1 (E.D.M.) "[O]therwise the non-demanding party shall be deemed to have consented to a jury trial conducted by the bankruptcy judge." Id.

On April 25, 2005, Defendant filed a notice of non-consent to the jury trial before the Bankruptcy Court and a motion in the U.S. District Court to withdraw the reference of the action from the Bankruptcy Court, as provided under 28 U.S.C. § 157(d). On June 13, 2005, the U.S. District Court entered its order denying that motion without prejudice. The U.S. District Court's order requires the Bankruptcy Court to adjudicate any pretrial motions, including the pending motion for summary judgment that Defendant had filed in the U.S. District Court in October, 2004. Pursuant to the U.S. District Court's order denying the motion to withdraw the reference, this action will remain with the Bankruptcy Court unless and until a jury trial is required, at which time the U.S. District Court's order provides that the Defendant may again move to withdraw the reference consistent with the U.S. District Court's order.

III.
The Summary Judgment Motion and Hearing

After receiving the U.S. District Court's order denying Defendant's motion to withdraw the reference, the Bankruptcy Court then scheduled another status conference for the purpose of establishing

-7-

a schedule to hear any pending pretrial motions or conduct other pretrial actions in this case. The Court

held the status conference on July 29, 2005. Plaintiff's attorney did not attend, although an attorney from

the Trustee's office did attend as well as an attorney representing Defendant. The parties in attendance

advised the Court that the motion for summary judgment filed by Defendant in the U.S. District Court in

October, 2004, had not yet been adjudicated by the U.S. District Court and that it should now be

scheduled for hearing by the Bankruptcy Court. After conferring with the parties, the Bankruptcy Court

entered an order scheduling a hearing on Defendant's motion for summary judgment for August 26, 2005.


Although the Bankruptcy Court was advised at the July 29, 2005 status conference that the

pleadings filed in the U.S. District Court regarding the motion for summary judgment were complete and

would not need to be supplemented, nevertheless, on August 19, 2005, Plaintiff filed yet another response

with two new affidavits in addition to the two affidavits that Plaintiff had previously filed in the U.S. District

Court in support of his response to the motion for summary judgment. Although Plaintiff's supplemental

response was timely filed under L.B.R. 9014-1(e), it exceeded the five page limit that the local bankruptcy

rule sets for additional reply briefs beyond the initial brief filed in support of or in opposition to a motion in

an adversary proceeding. The two new additional affidavits that accompanied Plaintiff's supplemental

response were timely filed under Fed. R. Civ. P. 56(c) as made applicable to this adversary proceeding

by Fed. R. Bankr. P. 7056. On August 25, 2005, one day before the scheduled hearing, Defendant also

filed a brief in reply to Plaintiff's supplemental response and Defendant filed a motion to strike that pleading.

Further, on the day before the hearing, Plaintiff delivered to the Bankruptcy Court's chambers (but did not

file with the Court) copies of various opinions that Plaintiff believes support his response to Defendant's

-8-

motion for summary judgment.

The Bankruptcy Court held a hearing on Defendant's motion for summary judgment on August 26, 2005. At the beginning of the hearing, the Court informed the parties that it had reviewed Defendant's motion for summary judgment filed in the U.S. District Court, together with any supporting exhibits or affidavits, and that it had reviewed Plaintiff's response to the motion for summary judgment filed in the U.S. District Court together with any supporting exhibits or affidavits. The Court further informed the parties that it would not consider Plaintiff's supplemental response filed with the Bankruptcy Court on August 19, 2005, because it exceeded the page limit under L.B.R. 9014-1(e) for additional response briefs. However, the Court would consider the two new affidavits that were also filed by Plaintiff on August 19, 2005 because they were timely filed under Fed. R. Civ. P. 56(c), which permits the filing of affidavits prior to the day of the hearing on the motion for summary judgment. The Court further informed the parties that it also would not consider the latest reply brief filed by the Defendant on August 25, 2005, the day before the hearing, because this reply brief was not timely filed under L.B.R. 9014-1(e). The Court further informed the parties that Defendant's motion to strike filed on August 25, 2005 was not filed in conformance with the local bankruptcy rules and would be denied. Finally, the Court announced that it would not consider the unfiled copies of opinions that Plaintiff delivered to the Court's chambers the day before the hearing. The Court views those unfiled documents as improper ex parte communications with the Court. The Court then heard arguments of counsel in support of and in opposition to the motion for summary judgment.

IV.
Standard of Review

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c).

-9-

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is one where no reasonable fact-finder could return a judgment in favor of the non-moving party. Berryman v. Reiger, 150 F.2d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 248).

V.
Analysis

Plaintiff's first amended complaint contains two counts, each of which is brought under Elliott-Larsen. Count I does not refer to any specific provision in that statute but in its caption refers to "discriminatory treatment and hostile work environment." Although pled as one count, these two concepts require separate analysis, and the Court will address them accordingly.

Count I - Discriminatory Treatment

Under § 37.2202(1)(a) of Elliott-Larsen, an employer "shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws Ann. § 37.2202(1)(a). The case law applying Elliott-Larsen instructs that this Court first look for direct evidence of an impermissible bias. See Hazle v. Ford Motor Co., 628 N.W.2d 515, 520 (Mich. 2001). Michigan courts have adopted the definition of direct evidence used by the U.S. Court of Appeals for the Sixth Circuit in interpreting "the

-10-

analogous federal Civil Rights Act . . . ." Id. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999); Hazle v. Ford Motor Co., 628 N.W.2d at 520.

Defendant's motion for summary judgment relies heavily on admissions made by Plaintiff as a consequence of his failure to timely respond to requests for admissions submitted by Defendant to Plaintiff in the U.S. District Court action. However, after Defendant filed its motion for summary judgment, the U.S. District Court entered an order on February 8, 2005 granting Plaintiff's motion for relief from his failure to timely reply to the requests for admissions. Therefore, even though Plaintiff's answers to Defendant's requests for admissions were untimely, the answers that Plaintiff signed on October 13, 2004 must be taken into consideration by this Court for purposes of reviewing Defendant's motion for summary judgment. The Court has reviewed those answers. They do not provide any direct evidence of unlawful discrimination. However, Plaintiff asserts that Plaintiff's own affidavit and three affidavits of former employees of Defendant, Dale Williams,[1] Jon McKibbon and Kelly Scrimenti, provide alternate direct evidence of unlawful discrimination.

At the hearing on August 26, 2005, when asked by the Court which of these affidavits contained direct evidence of discrimination, Plaintiff's attorney directed the Court to paragraphs 8 and 9 of the Williams affidavit and paragraphs 6 and 7 of the McKibbon affidavit. The Williams affidavit refers to the

---

[1] At times, Williams is referred to in Plaintiff's pleadings as "Willis."

-11-

actions of Rodney Adkinson,[2] a manager who had been interviewing candidates for a supervisory position. Williams stated the following in paragraph 8 of his affidavit: "Atkinson [sic] said that because of Jose's 'language' and 'how he speaks,' people would have a hard time understanding him." (Pl.'s Resp. to Mot. for Summ. J., Ex. 3, Williams Aff. ¶ 8.) This paragraph mentions nothing that rises to the level of direct evidence of unlawful discrimination, but rather refers to a statement by Adkinson regarding Adkinson's view of Plaintiff's language and ability to communicate. Paragraph 9 of the Williams affidavit reads as follows: "I personally found [Adkinson's] comments shocking, offensive and discriminatory and I asked him if that was his only reason for not choosing [Plaintiff] for the position. Atkinson [sic] said 'pretty much.'" (Id. ¶ 9.) There are two statements in paragraph 9. The first simply conveys Williams' own personal view and feeling about Adkinson's comments. The subjective perceptions of a third party are not direct evidence of discrimination. Paragraph 9 then goes on to recite an exchange between Williams and Adkinson, where Adkinson allegedly stated that Plaintiff's "language" and "how he speaks" were "pretty much" the reasons why Plaintiff was not promoted.

Although not briefed by Defendant, Defendant argued at the hearing that Williams' statements about Adkinson's comments are inadmissible as hearsay. See Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993) (noting that Rule 56(e) requires that affidavits must set forth facts that would be admissible at trial); Mitchell v. Toledo Hospital, 964 F.2d 577, 584-85 (6th Cir. 1992) (finding that court cannot rely on inadmissible hearsay when deciding motion for summary judgment); State Mutual Life Assurance Co. of

_____

[2] Mr. Adkinson's last name appeared variously throughout the pleadings as "Adkinson," "Atkinson" and Ackinson." The Court will assume the spelling in Mr. Adkinson's affidavit is the correct spelling.

America v. Deer Creek Park, 612 F.2d 259, 264-65 (6th Cir. 1979) ("Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded.") (citations omitted). However, in this instance, Adkinson's affidavit indicates that he is Defendant's Regional Human Resources Manager and also creates the impression that he had some responsibility for promotion decisions on behalf of Defendant. As such, Adkinson's statements may be admissible at trial under Fed. R. Evid. 801(d)(2)(A) or (D) as statements of a party-opponent. Therefore, the Court may consider Williams' affidavit concerning Adkinson's statements. The issue then is whether paragraph 9 of Williams' affidavit provides direct evidence of discrimination.

In reviewing the evidence for purposes of deciding a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." Cox v. Kentucky Dept. of Transportation, 53 F.3d 146, 150 (6th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). A non-moving party's statements concerning a disputed material issue of fact should "be accepted as true." Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 290 (6th Cir. 1999). Accordingly, the Court must assume that Adkinson made the statements alleged. However, speech is not a protected characteristic under Elliott-Larsen. Therefore, even assuming Adkinson made his promotion decisions based on his belief that because of Plaintiff's "language and how he speaks, people would have a hard time understanding him," this does not constitute direct evidence of unlawful discrimination under the statute. If believed, Adkinson's comments about Plaintiff's speech and ability to communicate do not require the conclusion that unlawful discrimination motivated Adkinson's action in refusing to promote Plaintiff. Williams' affidavit does not contain direct evidence of discriminatory animus.

-13-

Plaintiff also pointed to paragraphs 6 and 7 of the McKibbon affidavit as containing direct evidence of discrimination. McKibbon's affidavit states that he was a customer service manager at the terminal where Plaintiff worked. In paragraph 6, McKibbon states that he did not hire Plaintiff for a supervisor position because Adkinson had informed McKibbon that he "was concerned about [Plaintiff]'s accent, speech pattern and capability to move up in the company." (Pl.'s Resp. to Mot. for Summ. J., Ex. 2, McKibbon Aff. ¶ 6.) For the same reasons explained above, this is not direct evidence of discrimination. Similarly, paragraph 7 of the McKibbon affidavit contains no direct evidence of discrimination. Instead, McKibbon simply describes his own experiences with Plaintiff, that McKibbon had "no problems" with Plaintiff's accent or speech pattern and that McKibbon had not received any "serious complaints" regarding Plaintiff's "speech pattern or his Hispanic accent." (Id. ¶ 7.) McKibbon's experiences with Plaintiff and his perception of Plaintiff's speech pattern provide no direct evidence that Defendant was motivated by unlawful discrimination in failing to promote Plaintiff.

The Scrimenti affidavit contains even less probative evidence than the Williams or McKibbon affidavits. Paragraph 9 of the Scrimenti affidavit says only that Plaintiff told Scrimenti "what was said to him about not being considered for the reason of the way he talked" and that Plaintiff "said he found it to be discriminating to him." (Id., Ex. 6, Scrimenti Aff. ¶ 9.) Scrimenti's repeating of Plaintiff's statements made to Scrimenti does not elevate those statements into direct evidence of whether Defendant acted based on unlawful discrimination, but instead is probative only of Plaintiff's own subjective belief about the motive behind Adkinson's actions.

Although it is not notarized or dated, Plaintiff's affidavit contains more information than the other affidavits relied upon by Plaintiff. In paragraph 9 of his affidavit, Plaintiff says that "McKibbon [ ] told me

-14-

that Mr. Adkinson [sic] did not want me to be a supervisor because of my Hispanic accent and speech pattern." (Id., Ex. 4, Rodriguez Aff. ¶ 9.) However, that statement is not contained in the McKibbon affidavit. Likewise, in paragraph 10 of Plaintiff's affidavit, he states that Williams "told me that on numerous occasions [Williams] had heard Mr. Atkinson [sic] make ethnically derogatory remarks about me in the presence of others and stated that he would not allow me to become a supervisor at FedEx because of my Hispanic speech pattern and accent." (Id. ¶ 10.) That statement does not appear in Williams' affidavit. Paragraphs 9 and 10 of Plaintiff's affidavit attribute statements to McKibbon and Williams that go well beyond what each of them said in their own affidavits. This presents a hearsay problem. Plaintiff is relating what McKibbon and Williams told Plaintiff about what Adkinson told McKibbon and Williams. Although McKibbon and Williams are former employees of Defendant, Plaintiff does not offer any authority for the Court to permit Plaintiff to testify as to the hearsay statements of McKibbon and Williams. Under Fed. R. Civ. P. 56(e), the Court cannot consider paragraphs 9 and 10 of Plaintiff's affidavit because they set forth facts that would not be admissible in evidence. Moore v. Holbrook, 2 F.3d at 699; Mitchell v. Toledo Hospital, 964 F.2d at 584-85; State Mutual Life Assurance Co. of America v. Deer Creek Park, 612 F.2d at 264-65. Therefore, Plaintiff's affidavit does not provide direct evidence of discrimination.

Because Plaintiff lacks direct evidence of unlawful discrimination, in order to prove a prima facie case, Plaintiff must meet the four-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In McDonnell Douglas, the Supreme Court promulgated a test whereby a plaintiff may prove unlawful employment discrimination even without direct evidence. The Michigan Supreme Court has applied that test to cases brought under Elliott-Larsen. See, e.g., Hazle v. Ford Motor Co., 628 N.W.2d at 520-21 (noting that the Michigan Supreme Court has applied the test to claims brought under Elliott-

-15-

Larsen based on race, age, and gender discrimination).

Under the McDonnell Douglas test, in order to establish a prima facie case, Plaintiff must present evidence that: 1) he "belongs to a protected class," 2) he "suffered an adverse employment action," 3) he "was qualified for the position," and 4) "the job was given to another person under circumstances giving rise to an inference of unlawful discrimination." Hazle v. Ford Motor Co., 628 N.W.2d at 521 (citations omitted). If Plaintiff presents evidence of each of these elements, he has established a prima facie case, and "a presumption of discrimination arises." Id. (citation omitted). Defendant may still rebut that presumption by articulating a legitimate non-discriminatory reason for the employment decision. If Defendant does so, in order for Plaintiff to survive this motion for summary judgment, "[P]laintiff must demonstrate that the evidence in the case, when construed in [P]laintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse employment action . . . ." Id. at 522 (internal quotation marks and citation omitted).

Plaintiff asserts in paragraph 7 of his first amended complaint that he is Hispanic. Defendant concedes that Hispanics are a protected class based on race and national origin. Second, Plaintiff must show that he suffered an adverse employment action. For this element, Plaintiff relies on the affidavits of McKibbon and Williams. Williams is a former manager employed by the Defendant. In paragraph 2 of his affidavit, Williams states that in a weekly management meeting "we were discussing operation issues as we were short a supervisor." (Pl.'s Resp. to Mot. for Summ. J., Ex. 3, Williams Aff. ¶ 2.) Williams further states that Adkinson indicated that interviews for the supervisor position were taking place "but there was no one qualified." (Id. ¶.) When asked by Williams whether he had considered Plaintiff for the position, Williams' affidavit declares that Adkinson did not consider Plaintiff a candidate for the position because

-16-

of his "language" and "how he speaks." (Id. ¶ 8.) McKibbon indicates that sometime after Plaintiff was rehired in 2001, "a supervisor position became open." (Id., Ex. 2, McKibbon Aff. ¶ 3.) McKibbon next states that Plaintiff "applied for the vacant supervisor position" and that McKibbon "was of the opinion he was qualified to be supervisor." (Id. ¶ 5.) McKibbon states then that he "did not hire [Plaintiff] for the supervisor position because Human Resource regional manager Rodney Adkinson said he was concerned about [Plaintiff]'s accent, speech pattern and capability to move up in the company." (Id. ¶ 6.) In his answer to request for admission number 4, Plaintiff denies that he never submitted any applications for any promotions while employed by Defendant. In his affidavit, Plaintiff states that he informed Adkinson in June, 2002 that he wanted to become a supervisor. (Id., Ex. 4, Rodriguez Aff. ¶ 4.) Plaintiff goes on to state in his affidavit that he was not selected even though he was interviewed twice by manager McKibbon, who informed him that he "was qualified and would make a good supervisor." (Id. ¶ 8.) According to Plaintiff, McKibbon told him that Adkinson "did not want me to be a supervisor because of my Hispanic accent and speech pattern." (Id. ¶ 9.) Plaintiff has presented evidence to show that he suffered an adverse employment action when he was not promoted to a supervisor. See Hazle v. Ford Motor Co., 628 N.W.2d at 523 (finding that failure to be promoted is an adverse employment action sufficient to meet the second element of a prima facie case of discrimination).

The third element of the McDonnell Douglas test is that Plaintiff must have been qualified for the position. McKibbon, the customer service manager in charge of the terminal, states in his affidavit that Plaintiff was qualified to be a supervisor. (Pl.'s Resp. to Mot. for Summ. J., Ex. 2 ¶ 5.) Williams' affidavit is not as explicit but also indicates that Williams believed Plaintiff to be qualified as well. Williams states that he suggested Plaintiff's name to Adkinson when discussing possible candidates, commenting that

-17-

Plaintiff "was a hard worker and a very good employee." (Id., Ex. 3 ¶¶ 6, 10-11.) Plaintiff has produced evidence to make a prima facie showing that he was qualified for the position.

Fourth, under the McDonnell Douglas test, Plaintiff must show that the position was given to another person under circumstances giving rise to an inference of unlawful discrimination. Plaintiff does not allege that he applied for any of the three supervisor positions. Instead, Plaintiff's affidavit recounts a conversation he had with Adkinson. In paragraph 7 of his affidavit, Plaintiff asserts that

> during the time I was taking [leadership] courses, at least three supervisor positions became vacant. Mr. Adkinson said I would not be considered because I needed to take more courses. Two [of the supervisor positions] were filled by non-Hispanic employees, and the other was filled by a White new hire, off the streets. One of the employees selected was Jim Johnson. He was White and had never taken any [leadership] courses, could not operate a computer and had no previous supervisory experience.

(Id., Ex. 4 ¶ 7.) Although not expressly stated, the implication is that Plaintiff asked Adkinson about the three supervisor positions but was told he needed more training. (Id.) Plaintiff's affidavit goes on to explain that he was interviewed twice for a supervisory position by McKibbon, "but was not selected." (Id. ¶ 8.) According to Plaintiff, McKibbon told Plaintiff that Adkinson told McKibbon not to promote Plaintiff because of Plaintiff's "Hispanic accent and speech pattern." (Id. ¶¶ 8-9) This last statement presents obvious hearsay problems, and cannot be considered under Rule 56(e).[3]

The Michigan Supreme Court discussed a plaintiff's burden in meeting the fourth element of a prima facie case in Hazle v. Ford Motor Co., in which the plaintiff alleged a failure to promote as the basis for

---

[3]McKibbon's own affidavit says much less. He does not state that Adkinson told him not to promote Plaintiff either because he was Hispanic or because of his Hispanic accent. Instead, McKibbon states in paragraph 6 only that he did not hire Plaintiff for a supervisor position because "Adkinson (Id., Ex. 2 ¶ 6.) was concerned about [Plaintiff]'s accent, speech pattern and capability to move up in the company."

-18-

her race discrimination claim. First, the <u>Hazle</u> court noted that the plaintiff could offer evidence of her

qualifications as compared to the successful candidate, but was under no obligation to do so. 628 N.W.

2d at 523-24 (discussing and quoting <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164 (1989)). The

court concluded that, although relative qualifications could be evidence of an employer's unlawful

discrimination, "a plaintiff is not required to provide evidence that he is at least as qualified as the successful

candidate in order to establish a prima facie case under <u>McDonnell Douglass</u>. <u>Id.</u> at 525. The court went

on to caution that,

> [b]y this holding, we do not mean to suggest that a plaintiff can establish the third and
> fourth elements of a <u>McDonnell Douglas</u> prima facie case merely by showing that he was
> qualified for the position and that a nonminority candidate was chosen instead. While a
> plaintiff is not required to show circumstances giving rise to an inference of discrimination
> in any one specific manner, the plaintiff's burden of production remains to present evidence
> that the employer's actions, if otherwise unexplained, are more likely than not based on the
> consideration of impermissible factors. In short, a plaintiff must offer evidence showing
> something more than an isolated decision to reject a minority applicant. As a matter of
> law, an inference of unlawful discrimination does not arise merely because an employer has
> chosen between two qualified candidates.

<u>Id.</u> at 525 (internal quotation marks omitted) (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450

U.S. 248, 253 (1981) and <u>Teamsters v. United States</u>, 431 U.S. 324, 358 n.44 (1977)).

"[T]he ultimate factual inquiry in any discrimination case is whether unlawful discrimination was a motivating

factor in the employer's decision" and, in order to survive summary judgment, a plaintiff must "present[ ]

evidence from which a jury, if unaware of defendants' reasons, could infer unlawful discrimination." <u>Id.</u> at

524-25.

The question then is whether a jury could infer unlawful discrimination from the following facts:

(1) three supervisory positions were filled by non-Hispanics, one of them by a "White" who was hired off

the street, and another by a "White" with no training courses, or supervisory or computer experience; and (2) Plaintiff was interviewed twice for a position but was not selected. It is interesting to note what Plaintiff does not allege in his affidavit. He does not state that he applied for the three positions that went to non-Hispanic applicants, but in paragraph 7 states only that "three supervisor positions became vacant" during the time that Plaintiff was taking courses. (Pl.'s Resp. to Mot. For Summ. J., Ex. 4 ¶ 7.) Further, although stating in paragraph 4 that he "wanted to become a supervisor," Plaintiff does not attest either that he applied for those three positions or that he was qualified for those three positions. As to the one position for which he was interviewed twice, Plaintiff does not disclose who filled that position or identify either their race or their qualifications. The Court finds that Plaintiff has failed to introduce sufficient evidence from which a jury could infer that Defendant was motivated by unlawful discrimination in failing to promote Plaintiff for any of these positions. Therefore, Plaintiff has failed to establish the fourth element of the McDonnell Douglas test.

Even if Plaintiff had established all four elements of the McDonnell Douglas test, such that a presumption of discrimination would arise, Defendant in this case would have successfully rebutted such presumption with the evidence that it produced. Adkinson's affidavit states in paragraph 9 that Defendant's Leadership Apprentice Course ("LAC") "is a prerequisite for any promotion to the supervisor level, absent previous unique circumstances, such as prior experience in the position in an acting capacity, which [Plaintiff] did not have." (Def.'s Br., Ex. 4, Adkinson Aff. ¶ 9.) Adkinson went on to state in that paragraph that "[Plaintiff] never completed the LAC, despite repeated attempts from FedEx to encourage him to do so." (Id.) Adkinson also noted in paragraph 10 the "general practice" of Defendant's Regional Vice-President of Operations "to not promote drivers directly to a supervisory position." (Id. ¶ 10.)

-20-

Finally, Adkinson states in paragraph 11 that he did "not consider [Plaintiff] for any promotion due to his lack of commitment to the LAC." (Id. ¶ 11.) Nowhere in his own affidavit or any of the other affidavits on which he relies does Plaintiff assert either that he completed the LAC or that completion of the LAC was not a prerequisite to promotion to a supervisor position. Plaintiff does deny in his answer to request for admission number 8 that he failed to complete the LAC, but such denial was not signed by Plaintiff, but instead was only signed by his attorney. More telling is the absence of any statement in Plaintiff's own affidavit attesting to his completion of the LAC.

The Court concludes that Adkinson's affidavit makes a sufficient showing that Defendant had a legitimate, nondiscriminatory reason for not promoting Plaintiff to supervisor. Therefore, even if Plaintiff had met the four part test under <u>McDonnell Douglas</u>, and the Court holds that he did not, the presumption of discrimination created by a prima facie case was rebutted by Defendant, which has met its burden of producing evidence that its employment actions relative to Plaintiff were taken for a legitimate, nondiscriminatory reason. Absent the presumption created by meeting the four part <u>McDonnell Douglas</u> test, in order to survive a motion for summary judgment, Plaintiff "must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." <u>Hazle</u>, 628 N.W.2d at 522 (internal quotation marks and citation omitted). Reviewing the evidence in a light most favorable to Plaintiff, and drawing any reasonable inferences in his favor, the Court concludes that Plaintiff has failed to create a triable issue for the jury. Accordingly, summary judgment must be granted with respect to Plaintiff's claim for discriminatory treatment under Count I.

Count I - Hostile Work Environment

Plaintiff does not cite to any legal authority in his first amended complaint as grounds for his hostile work environment claim in Count I, other than a reference to Elliott-Larsen in the heading of Count I. The Michigan statute contains a cause of action for hostile work environment, but it is limited to a hostile work environment created by sexual harassment. Mich. Comp. Laws Ann. § 37.2103(i) (defining sexual harassment and limiting it to certain conditions, including hostile employment environment in § 37.2103(i)(iii)). However, Michigan courts have recognized a cause of action for hostile work environment based on race, age and handicap. See, e.g., Bell v. CSX Transportation, Inc., 172 F.Supp.2d 933, 939 (E.D. Mich. 2001) (citing Chambers v. Trettco, 614 N.W.2d 910, 915 (Mich. 2000) (race); Downey v. Charlevoix County Board of County Road Commissioners, 576 N.W.2d 712 (Mich. Ct. App. 1998) (age and handicap).

Plaintiff must show that

(1) he belonged to a protected group; (2) he was subject to unwelcome communication or conduct on the basis of that protected characteristic; (3) the conduct or communication was intended to, or did, substantially interfere with his employment or created an intimidating, hostile, or offensive work environment; and (4) respondeat superior.

Bell v. CSX Transportation, Inc., 172 F.Supp.2d at 939 (citing Chambers v. Trettco, 614 N.W.2d at 915).

A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . . [M]ere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (discussing the federal Civil Rights Act of 1964), see also Everson v. Michigan Department of Corrections, 391 F.3d 737, 748 n.14 (6th Cir. 2004) (noting

-22-

the similarities between the federal and Michigan statutes and finding that cases construing the federal statutes "are persuasive rather than controlling authority in determining proper interpretation of the Elliott-Larsen Act").

Defendant concedes that Plaintiff belongs to a protected group, so Plaintiff has met the first element. Plaintiff's first amended complaint and response to Defendant's motion for summary judgment suffer from a lack of clarity and cohesion in addressing the specific causes of action and the related legal tests. As best the Court can determine, Plaintiff is relying on Adkinson's statements as the basis for this claim. Plaintiff must show that the alleged unwelcome communications interfered with his employment or created a hostile work environment. Plaintiff does not allege that he was personally subjected to Adkinson's comments. Instead, he heard them secondhand from others. Even assuming that Adkinson made the comments alleged, the comments do not meet the level of pervasive or severe discriminatory intimidation, ridicule or insult required. Moreover, the fact that Plaintiff heard the comments only through others makes it difficult if not impossible to meet the standard of pervasive or severe discriminatory ridicule or insult. The comments are in the nature of mere utterances of epithets that offended Plaintiff when others repeated the comments to him. Plaintiff has not "come forward with specific facts, supported by evidence in the record, upon which a reasonably jury could return a verdict for" Plaintiff based on Adkinson's comments. Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)).

However, Plaintiff also alleges that Adkinson continued to refuse to promote him, forcing him to resign. In his affidavit, Plaintiff states that

I submitted my resignation only after it became clear that Mr. Adkinson and [Defendant]

-23-

would not ever allow me to become a supervisor because I was Hispanic. I could not
endure the retaliation, embarrassment, humiliation and ridicule any longer. I was forced
to resign for the sake of my emotional health and well being.

(Pl.'s Resp. to Mot. for Summ. J., Ex. 4, Rodriguez Aff. ¶ 16.)

Assuming that Plaintiff intended Defendant's failure to promote Plaintiff to be another form of
"unwelcome conduct," Plaintiff must still establish that such conduct was based on his protected status as
a Hispanic. Plaintiff relies on the same evidence to support this claim as he did his claim for racial
discrimination. For the same reasons that the evidence was insufficient to establish the fourth element of
a prima facie case of discriminatory treatment, it also fails here. Accordingly, Defendant's motion should
be granted as to Count I.

Count II - Retaliation

Count II of Plaintiff's first amended complaint asserts that Defendant retaliated against him in
violation of § 37.2701 of Elliott-Larsen. That section of the statute provides that "a person shall not . . .
[r]etaliate or discriminate against a person because the person has a opposed a violation of this act, or
because the person has made a charge, filed a complaint, testified, assisted, or participated in an
investigation, proceeding, or hearing under this act." Mich. Comp. Laws Ann. § 37.2701(a). This
provision has been interpreted as protecting two different types of activity.

Elliott-Larsen prohibits retaliatory conduct by an employer in two situations: (1) when an
employee "has made a charge, filed a complaint, testified, assisted, or participated in an
investigation, proceeding or hearing under [Elliott-Larsen]," the participation clause; or (2)
when an employee "has opposed a violation of [Elliott-Larsen]," the opposition clause.

Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989) (quoting Mich.
Comp. Laws Ann. § 37.2701(a)).

-24-

The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings. The exceptionally broad protection of the participation clause extends to persons who have participated in any manner in Title VII proceedings. . . .

On the other hand, the opposition clause does not protect all opposition activity. Courts are required to balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel. . . .

While the means of opposition have been narrowly construed, the lawfulness of the employment practice has been broadly construed.  A person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful.

Thus, to determine this court's scope of review of the employer's action, it must first be determined whether the activity the employee engaged in falls within the "participation" clause or the "opposition" clause.  In our view, the language of the statute should be read literally, and, therefore, the instigation of proceedings leading to the filing of a complaint or a charge, including a visit to a government agency to inquire about filing a charge, is a prerequisite to protection under the participation clause.

Id. at 1312-13 (internal quotation marks, citations and footnote omitted).

Neither side delved into the statute far enough to address under which clause Plaintiff's conduct falls.  In his first amended complaint, Plaintiff alleges that "Defendant retaliated against [him] for complaining about discriminatory practices and racially biased and derogatory remarks." (First. Am. Compl. ¶ 20.) Plaintiff did not allege that there were any proceedings leading to the filing of a complaint or charge. Accordingly, Plaintiff falls under the opposition clause.

In order to establish a prima facie case of unlawful retaliation under Elliott-Larsen, a plaintiff must establish (1) that he opposed violations of the Act . . . , and (2) that the opposition . . . was a significant factor in an adverse employment decision. The "significant factor" standard . . . requires a showing of more than a "causal link."  A factor can be a "cause" without being "significant." Only the latter is sufficient to show retaliatory

-25-

discharge.

Booker v. Brown & Williamson, 879 F.2d at 1310 (internal quotation marks and citations omitted).

Plaintiff explained in his affidavit that he complained to three managers and to Adkinson's supervisor about the "discriminatory treatment and derogatory remarks." (Pl.'s Resp. to Mot. for Summ. J., Ex. 4, Rodriguez Aff. ¶¶ 14-15.) Plaintiff meets the first element for unlawful retaliation, having opposed what he believed, in good faith, was a violation of Elliott-Larsen. Next, Plaintiff must show that his complaining was a significant factor in the adverse employment decision, i.e. his failure to be promoted. Plaintiff fails to meet this element. Plaintiff has presented no evidence of, or even alleged, a causal connection between his complaining and Defendant's promotion decisions, much less that his complaining was a "significant factor." According to Plaintiff, the person with decision-making authority was Adkinson. However, Plaintiff has made no allegation that Adkinson knew that Plaintiff had complained to other managers or Adkinson's supervisor. Therefore, there is no basis to find a causal link between Plaintiff's opposition to a violation of Elliott-Larsen and Adkinson's failure to promote Plaintiff. Plaintiff has failed to establish a prima facie case of unlawful retaliation under Elliott-Larsen. Accordingly, Defendant is entitled to summary judgment with respect to Count II.

Constructive Discharge

In his response to Defendant's motion for summary judgment, Plaintiff alleges that he was constructively discharged. Plaintiff did not include this allegation in his first amended complaint, either as a separate cause of action or otherwise. However, the parties both addressed the issue at oral argument with no objection. "Constructive discharge is not, itself, a cause of action, but rather a defense to a claim of the voluntary leaving of the employee. However, discharge is among the retaliatory actions prohibited

-26-

by the [Michigan Civil Rights] act." <u>Jacobson v. Parda Federal Credit Union</u>, 577 N.W.2d 881, 882 n.9 (Mich. 1998). According to the Michigan Supreme Court, "a constructive discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign. Our approach historically has been to apply an objective standard of reasonableness to the action of the employee." <u>Id.</u> at 885 (internal quotation marks and citations omitted). "Where reasonable persons could reach different conclusions regarding whether these elements are established, the issue becomes a question of fact for the jury . . . ." <u>Vagts v. Perry Drug Stores, Inc.</u>, 516 N.W.2d 102, 105 (Mich. Ct. App. 1994) (citation omitted). However, because constructive discharge is a defense, "an underlying cause of action is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged." <u>Id.</u>; <u>Kroll v. The Disney Store</u>, 899 F. Supp. 344, 346-47 (E.D. Mich. 1995) (relying on <u>Vagts v. Perry Drug</u> in finding that the plaintiff must first establish a prima facie case of discrimination or retaliation before arguing constructive discharge).

In support of this allegation, Plaintiff points to the affidavits of McKibbon, Williams and Scrimenti. According to Plaintiff, the McKibbon and Williams affidavits show that Adkinson "let it be known the Plaintiff would never become a supervisor because of his Hispanic speech pattern and accent" and that "Adkinson constantly made derogatory remarks about Plaintiff's speech and accent to employees and at management meetings." (Pl.'s Resp. to Mot. for Summ. J. at 10.) These are the same affidavits and allegations that the Court has found insufficient to support a prima facie case for discrimination or retaliation. There being no underlying cause of action, Plaintiff cannot establish constructive discharge.

V.

<u>Conclusion</u>

The Court finds that there are no genuine issues of material fact and holds that Plaintiff has failed to make a prima facie case for race discrimination, discriminatory treatment, hostile work environment, or retaliation. Obviously, this produces a result that is disappointing both to Plaintiff and the Trustee. Perhaps if the parties had made an evidentiary record before the Bankruptcy Court in January, 2005 from which the Court could have observed any weaknesses in Plaintiff's case, and gauged the true settlement value of the case, the Bankruptcy Court may well have approved the settlement that was proffered at that time. Nevertheless, the fact that a settlement may have been available then, which in hindsight would have been better than a dismissal now, provides this Court with no basis to find that there are today any genuine issues of material fact that preclude the grant of summary judgment at this time. Accordingly, Defendant's motion for summary judgment is granted. The Court will enter an order consistent with this opinion.

**Not for Publication.**

Entered: December 01, 2005

/s/ Phillip J. Shefferly
Phillip J. Shefferly
United States Bankruptcy Judge

-28-